CC TO JUDGE KN

THE HONORABLE MARSHA J PECHMAN

FILED ENTERED
LODGED RECEIVED
JUN 07 2001 KN
AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LACONNER ASSOCIATES, L L C a Washington Limited Liability Company,

Plaintiff,

v

ERON BERG, DAN O'DONNELL, MARY LAM, JOAN CROSS, and JOHN STEPHENS, as individuals

Defendants

No C 01-225 P

**DEFENDANTS' MOTION TO DISMISS (PER Fed.R.Civ.P. 12)**

DATE· June 29, 100`
TIME To be set by Court
COURTROOM Judge Marsha Pechman

[ORAL ARGUMENT REQUESTED]

COME NOW THE DEFENDANTS, by and through their associated counsel of record, Michael C. Walter of Keating, Bucklin & McCormack, Inc , P S and Bradford E Furlong, and hereby request the following relief, based on the facts, law and argument set forth in this brief

## I. RELIEF REQUESTED

Dismissal of all claims and causes of action against Defendants, with prejudice, based on the absolute immunity afforded to legislators and discretionary decision-makers.

The basis of this motion is Fed R Civ P 12(b)(6) and Fed R Civ P 12(c)

Defendants request oral argument pursuant to Local Rule W D Wash Civ R 7(b)(6).

CV 01-00225 #00000009

IGINAL

KEATING, BUCKLIN & MCCORMACK, INC P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104 3175
PHONE (206) 623-8861
FAX (206) 223-9423

## II. STATEMENT OF FACTS

The facts supporting Defendants' Motion to Dismiss are set forth in Plaintiff's Complaint, a copy of which is attached hereto as Appendix A.[1] LaConner Associates, LLC, Plaintiff, is a Washington Limited Liability Company which does business in the Town of LaConner [2] The five Defendants are elected officials of the Town of LaConner, and all are alleged to have acted in their official capacity as such, "under color of state law " [3] While being sued in their individual capacity, the acts giving rise to Plaintiff's claim for relief were done "under color of state law" and through the Defendants' positions as either Mayor or Town Council Members for the Town of LaConner [4]

Plaintiff alleges that it owns property in LaConner which adjoins the Swinomish Channel, that the property includes industrial buildings which have been used for various industrial and food processing purposes up to and through 1992, and that historically the land has been zoned "industrial." [5] The Complaint sets forth a history of actions and decisions by the various Defendants from 1993 through 2000, and alleges that the Defendants, in their official capacities, did the following things:

- Conducted comprehensive planning under the State Growth Management Act (GMA) of the area, including Plaintiff's property,
- Approved and adopted "mixed use" land use zoning policies for the area, including Plaintiff's property,
- Initiated, participated in and approved a shoreline master program and "related zoning" for the area including Plaintiff's property,

---

[1] While the Defendants do in fact dispute many of the facts and allegations contained in Plaintiff's Complaint, Appendix A, **for the purposes of this motion only**, and since this motion is brought pursuant to Fed R Civ P 12(b)(6) and/or Fed R Civ P 12(c), Defendants will assume the truth of those facts and allegations If this motion is denied, Defendants reserve the right to refile this motion with supporting evidence, outside of the pleadings, pursuant to Fed R Civ P 56
[2] Complaint, p 1, ¶ 1
[3] Id , p 2, ¶¶ 2-6
[4] Id and p 2, ¶ 7, p 10, ¶ 44
[5] Complaint, p 3

KEATING, BUCKLIN & MCCORMACK, INC , P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623 8861
FAX (206) 223-9423

- Imposed, through ordinance, a moratorium on acceptance of development permits for the south end area of LaConner, including Plaintiff's property,

- At public hearings and meetings, expressed a desire to revoke the new shoreline master program and related comprehensive plan changes for the area, including Plaintiff's property,

- Acting on behalf of the Town of LaConner,[6] entered into a "settlement agreement" with Plaintiff and other third parties and then attempted to or did in fact breach that "settlement agreement",

- Approved three ordinances in November, 2000 which related to Plaintiff's property, and

- Submitted to the State of Washington, Department of Natural Resources (DNR) a "competing tidelands lease" for state-owned tidelands abutting a portion of Plaintiff's property in LaConner. [7]

In the "causes of action" section of the Complaint, Plaintiff states

> 1. Defendants' approval of Ordinances 790, 791, and 792 and Defendants' approval of the Town of LaConner's competing tidelands lease application with DNR, **all performed under the color of state law**, are arbitrary, irrational and interfere with Plaintiff's property rights.
>
> 2 The Defendants have no valid public purpose for their acts, and the acts violate Plaintiff's right to due process and right to equal protection under United States Constitution.
>
> 3 The combined effects of the acts committed by Defendants described herein, combined with the Defendants' admitted desire to acquire the subject property **for the Town** of LaConner, constitute a wrongful taking without fair compensation in violation of the United States Constitution.
>
> 4. Pursuant to 42 U.S.C. §1983, Plaintiff is entitled to recovery of damages against Defendants individually and separately [8]

---

[6] The Town is not a Defendant in this case Plaintiff consciously chose not to name the Town of LaConner as a Defendant

[7] Complaint, pp 4-9

[8] Complaint, pp 10-11

KEATING, BUCKLIN & MCCORMACK, INC , P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

In their answer to the Complaint, Defendants pleaded 19 affirmative defenses, one of which forms the foundation for the motion *sub justice* Absolute common law legislative immunity [9]

## III. EVIDENCE RELIED UPON

Plaintiff's Complaint for Damages (Appendix A)

## IV. ISSUE PRESENTED

Are the Defendants, all of whom are elected officials of the Town of LaConner, entitled to dismissal as a matter of law under Fed R Civ P 12(b)(6) and/or Fed.R.Civ.P. 12(c) because the acts and/or omissions alleged in the Plaintiff's Complaint are discretionary, legislative-type decisions for which Defendants are absolutely immune from suit under common law and the U.S. Supreme Court case of *Bogan v Scott-Harris*?

## V. LAW AND ARGUMENT

### A. Summary of Law and Argument

U.S. Supreme Court and federal court decisional law is clear that individuals acting in a "legislative" capacity, or who make legislative-type decisions are **absolutely** immune from all civil liability and claims for damages The U.S Supreme Court has confirmed this blanket and absolute common law immunity for local government (city and town) lawmakers acting in their legislative capacity in the context of a damages lawsuit brought pursuant to the Federal Civil Rights Act, 42 U.S.C. §1983. See, *Bogan v Scott-Harris*, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998).[10]

The claims and allegations set forth in Plaintiff's Complaint, even if true and proven, confirm that all of the acts or omissions alleged against Defendants were purely legislative-type actions for which the absolute immunity of *Bogan* applies Plaintiff's Complaint makes clear that the Defendants – the Mayor of LaConner and four Town Council members – were making discretionary, legislative and public policy-based decisions for and on behalf of the Town of LaConner and its citizens. Their actions, no matter how unfavorable, unprofitable or disconcerting to Plaintiff, are

---

[9] *See*, Answer to Complaint, p 9, ¶ 10

[10] For the Court's convenience, a copy of the *Bogan v Scott-Harris* case is attached hereto as Appendix B

KEATING, BUCKLIN & MCCORMACK, INC, P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104 3175
PHONE (206) 623-8861
FAX (206) 223-9423

shielded from liability under this absolute immunity doctrine. The motives of the Defendants are irrelevant in determining either the application of or the extent of this absolute immunity Because their actions are discretionary or legislative acts – as alleged in the Complaint – Defendants are entitled to dismissal as a matter of law

**B. Standard of Law for Dismissal Under Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 12(c)**

Fed.R.Civ P 12 provides for pretrial motions to challenge the opposing party's pleadings, and to assert other defenses and objections. Fed.R.Civ.P. 12(b)(6) provides for dismissal of claims which "fail to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(c), "Motion for Judgment on the Pleadings," authorizes any party to move for judgment "on the pleadings" after the pleadings are closed.

Under either Fed R Civ P 12(b)(6) or Fed.R Civ.P. 12(c), review is limited to the contents of the Plaintiff's Complaint. *See, Sprewell v. Golden State Warriors, et al*, 231 F.3d 520 (9th Cir. 2000). All allegations of material fact are taken as "true" and construed in the light most favorable to the non-moving party. *Id* at 527, *Enesco Corporation v Price/Costco, Inc*, 146 F 3d 1083, 1085 (9th Cir 1998). The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *Sprewell v Golden State Warriors, supra* at 231 F 3d 527-28, *Clegg v Cult Awareness Network*, 18 F 3d 752, 754-55 (9th Cir. 1994). Where it appears beyond doubt that a plaintiff can prove no set of facts in support of the claim asserted in the complaint that would entitle the plaintiff to relief, the complaint should be dismissed under Rule 12 *See, e g, Morley v Walker*, 175 F 3d 756, 759 (9th Cir. 1999) A Rule 12 motion tests the legal sufficiency of plaintiff's claim or claims as stated in the complaint The court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. If the answer is

KEATING, BUCKLIN & MCCORMACK, INC., P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623 8861
FAX (206) 223-9423

unequivocably no, the motion should be granted *Conley v Gibson*, 355 U.S 41, 45-46, 78 S.Ct. 99, 102, 2 L 2d 80, 84 (1957), *De La Cruz v. Tormey*, 582 F 2d 45, 48 (9th Cir 1978).

A Rule 12 motion is appropriate when plaintiff has made allegations which disclose some defense or bar to recovery.

> If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts

*Weisbuch v County of Los Angeles*, 119 F 3d 778, 783, n 1 (9th Cir 1997); *See, also, Quiller v Barclays American/Credit, Inc*, 727 F 2d 1067, 1069 (11th Cir 1984) Where a lawsuit is brought against defendants who have statutory or common law immunity (*e g.*, governmental entities and/or legislators), motions to dismiss are often based on the allegations contained solely within the complaint. *See, e.g., United States v. Gaubert*, 499 U S 315, 324-25, 111 S Ct. 1267, 1274-75, 113 L Ed 2d 335, 347-348 (1991), *Kulwicki v Dawson*, 969 F 2d 1452, 1462 (3rd Cir 1992), and *Long v. Satz*, 181 F 3d 1275, 1278 (11th Cir. 1999) A trial court's application of legislative immunity is a **question of law**, reviewed de novo *San Pedro Hotel Co , Inc v City of Los Angeles*, 159 F 3d 470, 476 (9th Cir 1998).

The existence of an immunity defense should be decided early in litigation *Hunter v Bryant*, 502 U S 224, 227, 112 S Ct 534, 537, 116 L Ed 2d 589, 596 (1991): *Jones v City of Chicago*, 856 F 2d 985 (7th Cir 1988)(a judge should always decide the issue of immunity) Because discovery can be intrusive, in many cases it will not be allowed where an immunity is pleaded until the issue of the immunity has been resolved *Harlow v Fitzgerald*, 457 U S 800, 818, 102 S.Ct. 2727, 2378, 73, L Ed 2d 396, 411 (1982) The existence and early adjudication of an immunity defense is of such importance that denial of a motion for summary judgment based on an immunity defense is a final, appealable decision of the federal court which is immediately

KEATING, BUCKLIN & MCCORMACK, INC , P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

appealable See, e g, *Harlow v Fitzgerald, supra, Mitchell v Forsyth*, 472 U.S 511, 105 S.Ct. 2806, 86 L Ed 2d 411 (1985)(denial of claim of qualified immunity presents only question of law and is immediately appealable as a final decision); *Behrens v Pelletier*, 516 U S 299, 116 S Ct 834, 133 L.Ed. 2d 773 (1996)(denial of motion for summary judgment based on existence of qualified immunity is final, appealable decision in federal court), and *Price v Kramer*, 200 F 3d 1237 (9th Cir 2000)(failure to appeal denial of a request for immunity before trial waives the right to appeal it after trial)

Based on the allegations contained solely within Plaintiff's Complaint, there is no set of facts which would entitle Plaintiff to any relief sought in this §1983 action as against the five individually named Defendants, all of whom were acting in their legislative capacity and/or were making discretionary, public-policy-type decisions for which the common law (*Bogan*) immunity applies Under *Bogan*, Defendants have an absolute immunity from suit for damages, and Plaintiff's claims should be dismissed

**C. Defendants Are Entitled To Rule 12 Dismissal Under The Blanket, Absolute Immunity Afforded To Local Government Legislators Acting In Their Legislative Capacity, Under *Bogan v. Scott-Harris*.**

**1. Broad, Absolute Common Law Immunity.**

In *Bogan v Scott-Harris*, the U S. Supreme Court re-confirmed the blanket and absolute immunity afforded to legislators from suit under 42 U S.C §1983, when acting in their legislative capacity or when performing what are considered legislative-type acts. [11] In *Bogan*, the former director of the City of Fall River, Massachusetts Department of Social Services brought a civil rights damages action under 42 U.S.C. §1983 against the City of Fall River and various City officials, alleging that the City's passage of an ordinance eliminating the director's position violated her First

[11] *See*, Appendix B, at pp 4-7

KEATING, BUCKLIN & MCCORMACK, INC, P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

Amendment rights. Anticipating a reduction in state aid, Mayor Daniel Bogan proposed freezing salaries of all municipal employees and eliminating various City positions. As part of this proposal, Mayor Bogan called for the elimination of DHHS (the Department of Health and Human Services), of which plaintiff Janet Scott-Harris was the sole employee The City Council then approved an Ordinance eliminating DHHS and Scott-Harris' position, and the City Council thereafter adopted an Ordinance confirming the elimination of that department and Scott-Harris' job

Scott-Harris filed suit under 42 U.S.C §1983 against the City, Mayor Bogan, Marilyn Roderick, the Vice President of the Fall River City Council, and several "other City officials " *Id* at 523 U.S. 47. She alleged that adoption of budget ordinances and the elimination of her position was motivated by racial animus and a desire to retaliate against her for exercising her First Amendment rights *Id*

The District Court denied Bogan's, Roderick's and the individual City officials' motions to dismiss on the ground of legislative immunity and the case went to trial *Id* On a motion for a judgment notwithstanding the verdict, the District Court again denied the claims of absolute legislative immunity to the individual defendants The Court of Appeals set aside the verdict against the City, but affirmed judgments against Roderick and Bogan *Id* at 523 U S 48 The Appellate Court concluded that the challenged conduct was not purely "legislative" and, therefore, the absolute immunity from civil liability did not apply

On certiorari, the U.S. Supreme Court reversed the judgments against the individual City Defendants (Mayor, City Council Vice President, and other Council Members), and held that local legislators are absolutely immune from suit for damages under §1983 for their legislative activities The Court also held that the absolute immunity attaches to "all" actions of local officials taken "within the sphere of legislative activity," and that voting for or against an ordinance, making budget

KEATING, BUCKLIN & MCCORMACK, INC, P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

decisions, and signing ordinances were broadly construed legislative acts for which the absolute immunity from lawsuit applied. *Id* at 523 U S 54-56.

In reaching its decision, the Supreme Court acknowledged that ". . . legislators are absolutely immune from liability for their legislative acts has long been recognized in Anglo-American law" *Id* at 523 U S. 48. The Court noted that historically legislators were entitled to "absolute immunity from suit" under common law, and that "Congress did not intend the general language of §1983 to 'impinge on a tradition so well grounded in history and reason' " *Id* at 523 U.S. 49. The Court also noted that the common law at the time §1983 was enacted deemed local legislators to be "absolutely immune from suit for their legislative activities" *Id*

The Court in *Bogan* emphasized the important public policy and common-sense reasons for the blanket, absolute immunity afforded to local government lawmakers

> The rationale for according absolute immunity to federal, state and regional legislators apply with equal force to local legislators. Regardless of the level of government, the exercise **of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability.** *See Spallone v United States*, 493 U.S. 265, 279, 110 S.Ct 625, 634, 107 L Ed 2d 644 (1990)(noting, in the context of addressing local legislative action, that 'any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process'); [other citations omitted]. Furthermore, the time and energy required to defend against the lawsuit are of particular concern at the local level where the part-time citizen-legislator remains commonplace [citations omitted] and the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability [citation omitted]
>
> Moreover, certain deterrents to legislative abuse may be greater at the local level than at other levels of government Municipalities themselves can be held liable for constitutional violations, whereas states and federal government are often protected by sovereign immunity. [citations omitted] And, of course, the ultimate check on legislative abuse – the electoral process – applies with equal force at

KEATING, BUCKLIN & MCCORMACK, INC., P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

> the local level, where legislators are often more closely responsible to the electorate. [cıtatıons omıtted][emphasıs added]

*Bogan, supra* at 523 U S 52-53 The Court repeatedly stressed the ımportance of a broad, absolute ımmunıty to local legıslators "ın advancıng the 'publıc good' " *Id* at 523 U S 53. All of these ımportant publıc polıcy consıderatıons are equally applıcable here, where the Defendants are part-tıme elected offıcıals of a fourth class town wıth a populatıon of approxımately 800, and Plaıntıff ıs seekıng punıtıve damages agaınst them

The *Bogan* Court broadly construed the absolute ımmunıty to attach to all actıons taken " ın the sphere of legıtımate legıslatıve actıvıty " *Id* at 523 U S 54, *See, also, Tenney v Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019, 1027 (1951) The defendant need not actually be a "legıslator" ın the strıctest sense ın order to benefit from the absolute ımmunıty; all that ıs requıred ıs that hıs or her actıon be taken "ın the sphere of legıtımate legıslatıve actıvıty " *Id*

Whether an act ıs legıslatıve turns on the nature of the act, rather than on the motıve or ıntent of the offıcıal performıng ıt. *Bogan, supra* at 523 U S 54. Thus, the motıves of the Defendants ın thıs lawsuıt, theır ıntent or theır ratıonale for doıng what they dıd (or dıdn't do) are **irrelevant** to a determınatıon of whether the ımmunıty attaches and, therefore, whether Plaıntıff's claıms agaınst them should be dısmıssed. *Id* As the Supreme Court stated ın *Tenney, supra*.

> Furthermore, ıt sımply ıs 'not consummate wıth our scheme of government for a court to inquıre ınto the motıves of legıslators '

*Tenney, supra* at 341 U.S. 377, 71 S.Ct. 788. Therefore, ın order to determıne whether the blanket, legıslatıve ımmunıty applıes, the Court must strıp Plaıntıff's allegatıons of " . all consıderatıons of ıntent and motıve, ", *Id* at 523 U S. 55, and make a determınatıon based upon the acts whıch are pleaded ın Plaıntıff's Complaint Any response by the Plaıntıff whıch ınterjects the motıves, ratıonale, goals, or ıntent of the Defendants should be dısregarded.

KEATING, BUCKLIN & MCCORMACK, INC , P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

In *Bogan*, the Supreme Court had "lıttle trouble" concludıng that all of the actıons were taken wıthin the sphere of legıslative actıvity. The Court held that Roderıck's acts of "votıng for an ordınance" were "quıntessentıally legıslatıve " *Id* The Court found Mayor Bogan's ıntroductıon of a budget and sıgnıng ınto law an ordınance were also "formally legıslatıve, even though he was an executıve offıcıal " The Court found all of Bogan's actıons to be "legıslatıve" because " . they were ıntegral steps ın the legıslatıve process " *Id* As long as the actıon reflects a **"discretionary policy making decision"**, ıt falls wıthın the sphere of legıslatıve actıons whıch benefit from the absolute ımmunıty *Id* [emphasıs added] Where Cıty offıcıals govern ın a field where legıslators tradıtıonally have power to act, the actions are "legıslatıve" and subȷect to the ımmunıty. [12]

**2. <u>All of the Actions Against the Defendants Alleged in the Complaint Were "Legislative" or "Taken in the Sphere of Legitimate Legislative Activity."</u>**

A revıew of LaConner Associates' Complaint makes clear that all of the actıons alleged thereın agaınst the Mayor and four Town Councıl Members were eıther purely legıslatıve decısıons, actıons taken "ın the sphere of legıtımate legıslatıve actıvıty", or a part of the delıberatıve, polıcy-makıng process for such decısıons for whıch the ımmunıty applıes *Bogan, supra* at 523 U S 54-56, *Tenney, supra* at 341 U S. 376, 71 S Ct 788, *San Pedro Hotel Co , Inc v Cıty of Los Angeles*, *supra* at 159 F 3d 476 Plaıntıff's Complaınt makes clear that the Defendants were actıng ın offıcıal, legıslatıve capacıtıes when they were doıng the thıngs alleged [13]

---

[12] As much as 15 years before the Supreme Court decıded *Bogan v Scott-Harrıs*, the 9th Cırcuıt had already held that the absolute ımmunıty of legıslators ın theır legıslatıve capacıty extended to local government decısıon-makers *See, Kuzınıch v County of Santa Clara*, 689 F 2d 1345, 1349 (9th Cır 1982) The 9th Cırcuıt has followed and broadly applıed the common law ımmunıty after *Bogan* *See, e g* *San Pedro Hotel Co , Inc v Cıty of Los Angeles*, 159 F 3d 470 (9th Cır 1998), *Hernandez v Gates*, 100 F Supp 2d 1209 (Dıstrıct Court, Central Dıstrıct of Calıfornıa, 2000)

[13] On page 2 of the Complaınt, Plaıntıff confırms that Defendant Berg " ıs a past member of the Town Councıl of the Town of LaConner, and ıs the current Mayor of the Town of LaConner," that Defendant Dan O'Donnell " ıs a past Mayor of the Town of LaConner and a current member of the Town Councıl for the Town of LaConner," that Defendant Mary Lam " ıs a past and present member of the Town Councıl for the Town of LaConner," that Defendant Joan Cross " became a member of the Town Councıl for the Town of LaConner durıng the year 2000 and remaıns a member of the Town Councıl," and that Defendant John Stevens " became a member of the Town Councıl for the Town of LaConner durıng the year 2000 and remaıns a member of the Town Councıl "

KEATING, BUCKLIN & MCCORMACK, INC , P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

Distilled to their essence, Plaintiff's allegations involve one or more of the following acts by the Defendants: (1) drafting, revising or voting for or against Town ordinances, or amending them, (2) drafting, revising and/or voting for or against the Town's "comprehensive plan" required under the Washington Growth Management Act (GMA); (3) speaking for or against a comprehensive plan for the Town of LaConner, (4) drafting, amending or voting for or against zoning code provisions, (5) drafting, amending or voting for or against shoreline regulations authorized under the State Shoreline Management Act (SMA), (6) discussing, debating or lobbying for policy changes to comprehensive plan, shoreline regulations, zoning changes, or municipal ordinances as elected officials; (7) voting for, adopting or approving a moratorium on development in the Town; and (8) applying for the lease of property on behalf of the Town On their face, each and every one of these acts or actions can only be construed as "legislative", done within the "sphere of legitimate legislative activity," or, at worst, ad hoc decision making or the formulation of policy which is an integral part of the deliberative process by which government functions. *See, e g , San Pedro Hotel Co , Inc., supra* at 159 F.3d 476. As discussed below, each and every one of these actions is a purely **governmental** action, involving public policy issues, debate, discussion and the exercise of discretion by the Defendants, who were, as Plaintiff readily admits in his Complaint, "acting under color of state law" on behalf of the Town of LaConner As such, the allegations establish, on their face, the Defendants' entitlement to the absolute common-law legislative immunity accorded under *Bogan v Scott-Harris*, *Tenney v Brandhove*, and *Kuzinich v County of Santa Clara*

### 3. <u>Drafting and/or Approving a City Ordinance</u>.

Plaintiff's Complaint alleges that Defendants violated Plaintiff's constitutional rights in drafting and/or approving and/or amending City ordinances

KEATING, BUCKLIN & MCCORMACK, INC , P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

> "The passage of an ordinance is, of course a legislative act, a legislative function,' and equivalent to legislative action" 5 E McQuillin, *Law Of Municipal Corporations*, §15.01(3rd Ed.).

It is simply beyond dispute or argument that the acts of drafting, approving, lobbying for, or voting for or against municipal ordinance is a singularly legislative activity The Supreme Court in *Bogan* confirmed that the act of " . . voting for an ordinance [is] quintessentially legislative." *Id* at 523 U S 55. The power to enact ordinances or to adopt resolutions necessarily implies power in the same body to amend them 6 E McQuillin, *Law of Municipal Corporations*, §21 01(3rd Ed 1998) Furthermore, power to amend municipal legislation rests only in the **legislative** branch of the municipality. *Id* Since the enactment of ordinances is legislative, it clearly follows that the amendment, revision or elimination of such ordinances is legislative as well.

Moreover, attempting to lobby, persuade or coerce colleagues to vote one way or another on approval of an ordinance, or compelling another to make a specific policy-based decision are purely acts within the realm of legislative decision making, and are shielded from liability *San Pedro Hotel Co , Inc v City of Los Angeles, supra* at 159 F.3d 474, 476-77

**4. <u>Drafting, Revising and/or Voting on a City "Comprehensive Plan" Authorized Under Growth Management Act.</u>**

In 1990 the State legislature enacted the Growth Management Act (GMA), Chapter 36.70A RCW in response to concerns about uncoordinated and unplanned growth in Washington RCW 36.70A.010. GMA imposes new requirements for land use planning, and provides local governments with new tools for accommodating growth. LaConner is one of the governments required to plan under GMA. Under GMA, cities and towns must take (among others) the following actions. (1) designate critical areas, agricultural lands, forest lands, resource lands and so on, and adopt development regulations to protect such lands; (2) adopt comprehensive plans, and (3) adopt

KEATING, BUCKLIN & MCCORMACK, INC , P S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

development regulations that are consistent with and implement their comprehensive plans. RCW 36.70(A).040(3)-(5).

Under GMA, the authority of cities to make decisions required by the Act is vested solely within the legislative body of those cities. *See, e g* RCW 36 70A.030(4), (7), (13), (16); 36 70A.035(2)(a); 36 70A 090; 36 70A 070.200 A cursory review of the Growth Management Act will confirm that all budgeting, planning and comprehensive plan work required under the Act is mandated as a "legislative" process Id

Under GMA, the comprehensive plan is the primary land use planning tool for local governments All development regulations must be consistent with and implement the city-approved comprehensive plans RCW 36 70(A).040(3), (4). Counties and cities planning under GMA must also conduct their activities and make all capital budget decisions in conformity with comprehensive plans RCW 36.70A.120.

The State Department of Community Development has developed procedural criteria for adopting comprehensive plans and development regulations which are codified at Ch. 365-195 WAC As with the statutory scheme under Chapter 36 70A, it is clear from these GMA procedural criteria that it is the legislative body that is required to make substantive decisions under GMA, and to approve comprehensive plans and comprehensive plan amendments These acts cannot be done ministerially, administratively or through any other person or process It is also clear under these state regulations that all GMA-related and comprehensive plan design and adoption decisions are part of a discretionary, policy-oriented process *See, e g* , WAC 365-195-020, §040, §060, §305, and §700. All aspects of the drafting, revising or voting for or against GMA-mandated comprehensive plans are indisputably discretionary, policy-based **legislative** decisions

> Local governments have **broad discretion** in developing [comprehensive plans] and [development regulations] tailored to local

KEATING, BUCKLIN & MCCORMACK, INC , P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

> circumstances. *Diehl*, 94 Wn.App. 651. Local discretion is bounded, however, by the goals and requirements of the GMA In reviewing the planning decisions of local governments, the board [Growth Management Hearings Board] is instructed to recognize **'the broad range of discretion** that may be exercised by counties and cities consistent with the requirements of this chapter' and to grant deference to counties and cities in how they plan for growth, consistent with the requirements and the goals of this chapter' RCW 36 78.3201 (emphasis added). [all emphasis and brackets in original]

*King County v. Hearings Board*, 142 Wn.2d 543, 561, 14 P 3d 133 (2000). A county or city has " . broad discretion to develop a comprehensive plan and development regulations that are suited to its local circumstances " *Id* Generally, when a municipality adopts a comprehensive plan and a zoning code, it acts in a legislative, policy-making capacity *Barrie v Kitsap County*, 93 Wn 2d 843, 851-52, 613 P.2d 1148 (1980). Attempting to persuade or coerce colleagues to vote one way or another, or to make a specific policy-based decision is an integral part of the legislative process, and is shielded from liability. *See, e g, San Pedro Hotel Co , Inc v City of Los Angeles, supra*

Here, there can be no doubt but that all of the claims and allegations in Plaintiff's Complaint relating to the drafting, revising, and voting for or against the Town's "comprehensive plan", and any GMA-related decisions are purely legislative and discretionary actions which fall squarely within the legislative immunity afforded local government legislators.

**5. <u>Drafting, Amending or Voting For or Against a City Zoning Code</u>.**

"Official controls", including zoning ordinances, are "the means of translating into regulations an ordinances . . . the general objectives of the comprehensive plan" RCW 36.70 020(11) *See*, also, *Barrie v Kitsap County, supra*, at 93 Wn 2d 848. Generally, when a municipality adopts or amends a zoning code, it acts in a legislative, policy-making capacity. *Barrie, supra* at 93 Wn 2d 851-852.

C \ks\mcw\wcia01022\p-0507-motion2 doc

KEATING, BUCKLIN & MCCORMACK, INC , P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

The enactment of a general zoning ordinance is legislative act. *Kuzinich v County of Santa Clara*, 689 F.2d. 1345, 1349 (9th Cir. 1982). Traditionally, the courts have viewed zoning decisions as purely legislative decisions, subject to very deferential judicial review. Julian Conrad Juergensmeyer and Thomas E Roberts, *Land Use Planning and Control* 38, 188 (1998). Legislative action contemplates the creation or amendment of a comprehensive plan or a zoning code affecting large areas of a county or city *Byers v Board of Clallam County Commissioners*, 84 Wn 2d 796, 529 P.2d 823 (1974).

In *Raynes v Leavenworth*, 118 Wn 2d 237, 821 P 2d 1204 (1992), the State Supreme Court held that adopting an amendment to the City of Leavenworth zoning ordinance did not involve the application of current law to a factual circumstance but, instead, required the discretionary and policy-making role of the legislative body *Raynes, supra* at 118 Wn 2d 245 Thus, the court concluded that actions taken by the city council were purely legislative in nature and not quasi-judicial or executive *Id* The court further held that if a city is working in a policy-making capacity, its acts are clearly legislative *Id*

In describing the discretionary and legislative nature of zoning decisions, the Washington Lawyers Practice Manual has succinctly described and delineated the process and the players.

> *Final decision at council level*
>
> The county or city council conducts public hearings Again the planning staff offers its presentation The council has before it the recommendations of the planning commission and the council planning subcommittee. RCW 35 63 120
>
> **Here, perhaps, politics will have a much greater influence on this body's decision than that of the lower forums. The council is the last to say and may, and does, substantially modify by its vote any earlier recommendation. The majority's decision becomes ordinance,** and the zoning is changed. It may on the other hand sometimes remand part or all of the matter back to a lower committee. [emphasis added]

KEATING, BUCKLIN & MCCORMACK, INC., P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

VIII *Washington Lawyers Practice Manual*, Ch. XXIII, pp 2-8 (2001)

6. **Drafting, Amending or Voting for or Against Shoreline Regulations.**

The Washington State Shoreline Management Act (SMA) was adopted by a vote of the people in 1972. It establishes a comprehensive planning and regulatory framework for the shorelines of the State of Washington Counties and cities are the primary regulators under the SMA. Under the SMA, decisions approving or modifying shoreline "master plans" or shoreline regulations are purely legislative and discretionary decisions. *See*, generally, Ch. 90.58 RCW.

Every local government is required to develop a shoreline management "master program" The local governments have the "primary responsibility for initiating and administering the regulatory program" of state shoreline management. RCW 90.58 050 Under RCW 90.58 100, the master program operates as a "use regulation" for the shorelines within the city or county. Among other things, the master programs includes maps designating the shorelines, an economic development element for shoreline dependent uses, a public access element, recreation element, provisions for traffic circulation, a general land use element, an element of conservation of natural resources, and various other elements – all determined through public hearings, and culminating in a discretionary policy-based decision by the legislative body *Id* The SMA involves a combination of zoning, comprehensive planning, and permitting tools specifically for shoreline areas within local government jurisdictions 6 *Washington Real Property Desk Book* §93.2 (3d Ed. 1996). The Act is similar to a special zoning code for shorelines. Each locality creates specific zones and applies the designation to its shoreline areas. Additionally, each locality also adopts use regulations which are the development standards that apply to each zone *Id*, at §93 2(1) As established in *Raynes v. Leavenworth, supra*, the adoption or amendment of zoning codes are a purely legislative, discretionary act involving public policy considerations.

KEATING, BUCKLIN & MCCORMACK, INC., P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

**7. Drafting or Voting for or Against a Moratorium on Development.**

Plaintiff's Complaint, in several places, challenges the Defendants' decisions adopting moratoria ordinances [14]

Moratoria and interim zoning ordinances are generally recognized techniques used by legislative bodies to preserve the status quo so that new plans and regulations will not be rendered moot by intervening development *Matson v. Clark Board of Commissioners*, 79 Wn.App 641, 644, 904 P.2d 317 (1995). Recognizing the emergency, temporary and expedient nature of such regulations, courts are extremely deferential to local legislative bodies in upholding moratoria and interim zoning regulations *Id*, *CLEAN v State*, 130 Wn.2d 782, 928 P 2d 1054 (1996) RCW 35.63.010 et seq. permits counties and cities to plan and regulate land use, including the use of moratoria, with little constraint. *Id*

The state legislature has conferred broad, discretionary authority to impose a land use moratorium on the legislative bodies of cities, towns and counties. See, RCW 35.63 200, RCW 35A.63 200, and 36 70A.390. Under this authority, **only legislative bodies, acting in a legislative capacity**, have the authority to enact a moratorium or interim zoning limitation Moreover, any moratorium must be established through ordinance which, as previously discussed, is a "quintessentially" legislative act. [15]

**8. Leasing or Purchasing Real Property.**

Plaintiff's Complaint also alleges that Defendants, acting on behalf of the Town, violated Plaintiff's constitutional rights by submitting to the State of Washington, Department of Natural Resources ". . . a 'competing' lease application on January 20, 2001 "[16] The Complaint alleges that

[14] Complaint, pp 6, 8 and 10
[15] *See*, § V C 3
[16] Complaint, p 9 ¶ 39

KEATING, BUCKLIN & MCCORMACK, INC , P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

"the Town's" [17] competing tidelands lease prevents any reasonable use of or development of Plaintiff's property and, therefore, is a wrongful interference with Plaintiff's property rights giving rise to damages under § 1983 [18]

As a matter of law, a municipal entity cannot engage in any real estate business – purchase, sale or lease of real estate – unless it is done for a "public" or municipal purpose. 12 E. McQuillin, *Law of Municipal Corporations* § 36.03 05 (3d Ed 1995) Purchase or lease of property by a municipality with intent to resell it or give it to a "private party" is prohibited by the Washington State Constitution. *CLEAN v State of Washington*, *Id* at 130 Wn 2d 799 Acquisition of property by sale or lease by a municipality which is intended for public use for public purpose does not violate constitutional prohibitions.

The approval of a lease of property by a public entity is a "legislative act" from which no appeal lies in the courts *Fishback v Public Service Commission of Indiana*, 138 N E 346, 347 (Ind 1923) Thus, the decision to lease city property to a school is a "legislative decision" involving the collective judgment of duly elected members of a city council *Coliseum Square Associates v City of New Orleans*, 544 So. 351, 355 (La. 1989, Calogero, J., dissenting). It is Black Letter law that legislative officials of all levels of government have the authority to lease or purchase property, and to lease or sublet property owned by the governmental entity *See, e g*, 47 ALR 3d 19, 43 (2000)("Power of Municipal Corporation to Lease or Sublet Property Owned or Leased by it")

The enabling legislation for cities and towns makes clear that the purchase, lease or sale of real property is a discretionary policy-based decision made by the legislative body based on public interest, public good and public necessity *See, e g* RCW 35 21 010 (Municipal corporations in general "may . . . acquire, hold, possess and dispose of property, "), RCW 35 22 280(11) First

[17] As noted previously, the Town of LaConner is **not** a Defendant in this lawsuit
[18] *Id*, p 10, ¶ 44 and p 11, ¶ 47

KEATING, BUCKLIN & MCCORMACK, INC., P.S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

class cities have authority to ". . . acquire, by purchase or otherwise, lands for public parks within or without the limits of such city, . . ."); RCW 35.23 010 (Second class cities "may acquire, hold, lease, use and enjoy property of every kind and control and dispose of it for the common benefit, "), RCW 35 24 010 (Third class cities authorized to "purchase, lease, receive, hold, and enjoy real and personal property and may control and dispose of it for the common benefit;"); RCW 35 27 010 (Towns " . may purchase, lease, receive, hold, and enjoy real and personal property and control and dispose of the same for the common benefit "); RCW 39 33 010 (States and any municipality or political subdivision " . may sell, transfer, exchange, lease or otherwise dispose of any property, real or personal . on such terms and conditions as may be mutually agreed upon by the **proper authorities** of the state and/or the subdivisions concerned.").

Also, attempting to persuade lobby or coerce colleagues to vote one way or another on a policy-based decision, or to coerce them to take specific action as part of a governmental, policy-based process, is subject to the absolute immunity afforded legislators *San Pedro Hotel Co , Inc v City of Los Angeles, supra,* (holding that councilmen who attempted to persuade colleagues to vote one way or another on approval of a loan were entitled to absolute legislative immunity and dismissal under Rule 12(b)(6)) There can be no doubt but that the actions of the Defendants alleged in the Complaint regarding the Town's lease of tidelands, even if it "competes" with Plaintiff's lease, and even if true, were purely legislative actions for which discretionary decision making was required. Regardless of motive, Defendants are immune from all such allegations and claims

## VI. CONCLUSION

Defendants are entitled to prompt dismissal of Plaintiff's Complaint Under the centuries-old common law, as re-confirmed in *Bogan v. Scott-Harris*, all of the acts set forth in Plaintiff's Complaint are discretionary, policy-based decisions, legislative in nature, and done in each

KEATING, BUCKLIN & MCCORMACK, INC , P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE (206) 623-8861
FAX (206) 223-9423

Defendant's official capacity for the Town of LaConner The motives, intent or reasons for each of these Defendants doing the acts alleged or failing to make the more profitable land use decisions demanded by Plaintiff are wholly irrelevant to the entitlement to the immunity, and cannot be considered in this motion. There are no facts consistent with the allegations in the Complaint which would entitle Plaintiff to relief since the immunity is broad and absolute. The immunity also immunizes Defendants from claims for attorney fees and punitive damages. [19]

The Court should dismiss Plaintiff's Complaint under either Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P 12(c)

Respectfully submitted this 7th day of June, 2001.

KEATING, BUCKLIN & McCORMACK, INC , P S

Michael C. Walter, WSBA #15044
Attorneys for Defendants

TOWN OF LACONNER

Bradford E Furlong, WSBA #12924
Attorneys for Defendants per T/C on 6-7-01

[19] Plaintiff seeks recovery under §1988 of attorney fees against all Defendants, as well as punitive damages against Defendants Berg, O'Donnell and Lam. Complaint, pp 11-12

KEATING, BUCKLIN & McCORMACK, INC , P S
ATTORNEYS AT LAW
800 FIFTH AVENUE SUITE 4141
SEATTLE WASHINGTON 98104-3175
PHONE (206) 623 8861
FAX (206) 223-9423

**APPENDIX**

**A. Complaint**

**B. *Bogan v. Scott-Harris***
**523 U.S. 44, 118 S.Ct. 966**

A

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LA CONNER ASSOCIATES, L.L.C., a Washington Limited Liability Company,

Plaintiff,

vs.

ERON BERG; DAN O'DONNELL; MARY LAM; JOAN CROSS; and JOHN STEPHENS, as individuals,

Defendants.

NO. C01 -0225-P

COMPLAINT AND JURY DEMAND

COMES NOW THE PLAINTIFF, LA CONNER ASSOCIATES, L.L.C., by and through its attorney Craig D. Magnusson, and alleges as follows:

PARTIES

1. Plaintiff LA CONNER ASSOCIATES, L.L.C. is a Washington limited liability company in good standing, organized and existing under the laws of the State of Washington. Plaintiff's principal place of business is in the town of LaConner, Skagit County, Washington. La Conner Associates owns property within the City limits of the town of LaConner, Washington.

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070
Fax: (425) 576-4040

2. Defendant ERON BERG ("Berg") is a resident of Skagit County, Washington. Berg is a past member of the Town Council of the town of LaConner, and is the current Mayor of the town of LaConner.

3. Defendant DAN O'DONNELL ("O'Donnell) is a resident of Skagit County, Washington. O'Donnell is a past Mayor of the town of LaConner and a current member of the Town Council for the town of LaConner.

4. Defendant MARY LAM ("Lam") is a resident of Skagit County, Washington. Lam is a past and present member of the Town Council for the town of LaConner.

5 Defendant JOAN CROSS ("Cross") is a resident of Skagit County, Washington. Cross became a member of the Town Council for the town of LaConner during the year 2000 and remains a member of the Town Council.

6. Defendant JOHN STEPHENS, ("Stephens") is a resident of Skagit County, Washington. Stephens became a member of the Town Council for the town of LaConner during the year 2000 and remains a member of the Town Council.

## JURISDICTION AND VENUE

7. This action arises under the Civil Rights Act of 1871, particularly 42 U.S.C. §1983, which allows property owners to recover damages if a person operating under color of state law is found liable for depriving an owner of a Federal right by violating one of United States Constitution's property-protective clauses.

8. This Court has personal jurisdiction over the Defendants pursuant to 42 U.S.C. § 1983 because the Defendants, and each of them, violated Plaintiff's property rights in violation of the United States Constitution within the Western District of Washington, pursuant to 28 U.S.C. §1343.

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070

9. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Western District of Washington at Seattle because Plaintiff's primary place of business, the real property in question, the acts of the Defendants, and the residences of the Defendants are all located in the Western District of Washington.

**FACTUAL ALLEGATIONS**

10. The property in question is located in the south end of the town of LaConner, adjoins the Swinomish channel, encompasses 3.02 acres of uplands, 100 lineal feet of fee tidelands, and 265 lineal feet of DNR leased tidelands. The property is referred to as the "Moore-Clark" property.

11. The property includes long-standing industrial buildings, some of which are over 100 years old.

12. The property lies immediately to the south of the commercial district of the town of LaConner and abuts residential properties located to the north and east. Immediately adjacent to the property is the Town Hall for the town of LaConner.

13. Before 1992 the subject property and its buildings were used for various industrial/food processing purposes. In accordance with the long-established historical use, the land was zoned industrial.

14. In 1992, the then-owner and operator of the site shut down and abandoned the fish food and manufacturing facility and abandoned operations at the site. The owner recognized the incompatibility of redeveloping the site for other industrial uses and commenced efforts for the town of LaConner to effect a rezone of the property to benefit the owner of the property, the immediately adjacent properties, and the town of LaConner as a whole.

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070

15. During 1993, Defendant O'Donnell, at that time the mayor of the town of LaConner, formed a citizens advisory group to study and recommend steps to assist in the economic revitalization of the south end industrial area in the town of LaConner, including the vacant Moore-Clark property and the adjacent LaConner Pier property. The citizens advisory group recommended a use and zoning change to mixed-use, which would allow the property to be redeveloped consistent with the surrounding properties.

16. During 1993, Defendant Lam, acting as an individual, prepared and submitted a plan to the Town Council for the south end industrial area encompassing mixed use/town services and park and proposed that the town of LaConner not consider a rezone from the then current industrial zoning until the town acquired the Moore-Clark property.

17. During 1993, the Town Council reviewed the overall Comprehensive Plan, and the town of LaConner Planning Commission recommended a change in the Comprehensive Plan/zoning for the south end industrial area to mixed use, including residential, to be consistent with the surrounding properties.

18. During November 1993, the Town Council approved and adopted the recommended mixed use policy for the south end industrial area, initiating the process to modify applicable provisions of the Comprehensive Plan, Zoning Code, and Shoreline regulations.

19. During February 1994, with a new Council, Defendant O'Donnell recommended reconsidering and deleting the Council's approved policy for a change in use to mixed use of the south end industrial area.

20. During 1994 through 1996, the Citizens Advisory Committee, Town of LaConner Planning Commission, and the Town of LaConner Council reviewed the town's

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070

Shoreline Master program and related zoning, including but not limited to a review of appropriate zoning and shoreline restrictions for the Moore-Clark and adjacent properties. Following the extensive review and public participation process, during 1996 the Town Council voted in favor of adopting a revised Shoreline Master Program which included an urban mixed use zone for the south end industrial area. The south end industrial area encompassed two properties only — the Moore-Clark property which is the subject of this lawsuit and the adjacent LaConner Pier property. The owners of both properties requested and encouraged the Shoreline and zoning changes to include urban mixed-use and residential to be compatible with the surrounding properties.

21. During November, 1996, Plaintiff LaConner Associates LLC purchased the Moore-Clark property for the purpose of redevelopment. The Plaintiff intended to redevelop the property into a mixed-use commercial/residential project, and relied upon the Town Council's adoption of a program for modifying the Shoreline Master program and related zoning and Comprehensive Plan to allow development of a mixed-use project.

22. During 1997, the Town Council proceeded with review and drafting of a modified Shoreline Master program which included a mixed-use designation for the Moore-Clark/LaConner Associates and LaConner pier properties.

23. During 1997, the LaConner Town Council adopted a new Shoreline Master Program and amended the Comprehensive Plan for consistency with the new Shoreline Master Program allowing for redevelopment of the LaConner Associates property into a mixed-use project. In addition to being approved by the Town Council, the Shoreline Master Program changes and zoning changes to allow mixed-use development were supported by the owners of the two affected properties.

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070

24. Consistent with the new Shoreline Master Program and zoning and Comprehensive Plan changes, the Plaintiff prepared a complete application for the "Port LaConner" development during December, 1997.

25. On January 7, 1998, LaConner Associates submitted a complete permit application for the Port LaConner development, a mixed-use project consistent with the Shoreline regulations, zoning, and Comprehensive Plan to the town of LaConner Building Department for review and approval.

26. On January 7, 1998, following Plaintiff's submittal of its complete development application, Council members and Defendants Berg, O'Donnell, and Lam conspired together and called a special, emergency Council meeting in an attempt to prevent Plaintiff from submitting a development permit application. By way of majority vote, Defendants Berg, O'Donnell and Lam imposed a moratorium on the acceptance of any development permits for the south end area. They also expressed a desire to revoke the new Shoreline Master Program and related Zoning Comprehensive Plan changes allowing for mixed-use development in the south end.

27. Not withstanding Defendants Berg, O'Donnell and Lam's attempt to prevent LaConner Associates from submitting its development application for a mixed-use project consistent with approved zoning, the town of LaConner's Building Department determined during February, 1998 that the application was "complete" and therefore vested under state law.

28. Following an appeal of the town's determination that LaConner Associates' application complied with Shoreline and zoning statues and was complete, during April, 1998, the town's Hearing Examiner dismissed the application finding that the zoning

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070

changes had not been properly completed and as such did not allow for the proposed mixed-use project.

29. During May, 1998, within the time periods allowed by law, Plaintiff LaConner Associates appealed the Hearing Examiner's decision to Skagit County Superior Court.

30. During July, 1998, the town of LaConner and Plaintiff participated in a mediation process concerning the application and zoning changes, and reached agreement. By way of that written agreement, on July 31, 1998, Plaintiff and the town of LaConner agreed as follows:

> The parties agreed that the town of LaConner will engage in a sub-area planning process for an area of LaConner encompassing the Moore-Clark/LaConner Pier properties. This will include review and updating of the Comprehensive Plan, Shoreline Master Program and uniform development code. All normal legal/planning processes will be followed.
>
> The planning process will proceed expeditiously and if possible be completed in one year. The town of LaConner will direct appropriate staff and financial resources to this process.

In addition, the parties agreed as follows:

> Simultaneously the parties will engage in a planning effort to explore alternate developments and available grants that might be available for development of the shore lands and tide lands.

31. Pursuant to the agreement, Plaintiff dismissed its Superior Court action concerning the January 7, 1998 permit application and committed to working in good faith with the town of LaConner concerning further review and consideration of zoning for the south end area.

32 During July 1998 through January 1999, the town of LaConner conducted further surveys of residents concerning south end use; and hired a Planning Consultant, Madrona Planning, to assist in the process and to provide reports and recommendations concerning south end planning. The surveys supported and the planner's recommended

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070

and supported mixed-use for the south end properties, and determined that there was no reasonable industrial use for the properties.

33. As part of the process agreed to between the town and Plaintiff, a core planning group was formed for the south end area Not withstanding Defendants Berg, O'Donnell and Lam's attempts to influence the work and recommendation of the core planning group by making changes to the members, the core planning group recommended to the town of LaConner Planning Commission during September, 1999 that the area be zoned for mixed-use.

34. During February, 2000 the town of LaConner Planning Commission recommended to the town of LaConner Council that mixed-use development be allowed in the south end area.

35. Not withstanding the reports and recommendations from the planning consultants, the core planning group, provisions of the 1997 Shoreline code, and the recommendations of the Planning Commission, Defendants O'Donnell, Lam, Cross and Stephens acting as members of the Town Council proposed and approved changes to the Shoreline Master Plan, Comprehensive Plan, and related statues which prevent mixed-use development of the south end properties.

36. By way of Ordinances 790, 791, and 792, passed by vote of the LaConner Town Council on November 14, 2000 as approved by Defendants O'Donnell, Lam, Cross, and Stephens, and as approved and signed by Defendant Berg, Mayor, Defendants acting under color of state law and the town of LaConner effectively rezoned the south end industrial properties to prevent any redevelopment and any reasonable development use of the LaConner Associates property.

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070
Fax: (425) 576-4040

37. During the year 2000, Plaintiff applied for a Shoreline permit from the town of LaConner for the reconstruction/construction of a pier and float adjacent to the LaConner Associates property and located in part over the DNR land leased by LaConner Associates. Following review, the town of LaConner granted the requested permit during December 2000.

38. Plaintiff's lease for the DNR tidelands expired January, 2001, and LaConner Associates timely submitted a lease renewal application with the Washington State Department of Natural Resources based upon the construction and use of the new pier and float as approved by the town of LaConner.

39. Not withstanding LaConner's Associates' Shoreline permit approval, the town of LaConner by way of application dated November 15, 2000 submitted to the State of Washington Department of Natural Resources a "competing" lease application on January 20, 2001. In justification of its completing lease application, the town's application states:

> Improvements are in conceptual planning stage. Town intends to develop public access improvements adjacent to public open space improvements on existing public Right-of-Way.

40. As of today, the town of LaConner has no authorized plans to "develop public access improvements adjacent to public open space improvements on existing "public Right-of-Way," and in fact for years has failed to maintain the "public access Right-of-Way" adjacent to Plaintiff's property.

41. The town of LaConner's competing tidelands lease application is in direct conflict with the town's November 14, 2000 Ordinances restricting use of the LaConner Associates property to industrial/limited office. Granting the pending lease application to the town could prevent any reasonable water dependent industrial use, if any was

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070

available, and prevent any reasonable "public access" by the adjacent development and therefore make it impossible to provide the public access component to any development as a justification for a non-water dependent use.

42. The combination of inconsistent adjacent zoning and uses, the restrictive and limited zoning set forth in Ordinances 790, 791, and 792 as passed on November 14, 2000 and a continuing moratorium on development permits within the area, and the town's competing lease application for the adjacent tidelands all together prevents and is intended by the Defendants to prevent any reasonable use or development of the LaConner Associates property by the Plaintiff.

43. The Defendants, both individually and collectively, have expressed publically their intent to prevent development of the property by the Plaintiff; a desire to acquire the property for the town, complete a rezone allowing redevelopment, and redevelop the property for mixed-use under town ownership; and have expressed individual interest in acquiring the property for redevelopment and/or participating in the redevelopment of the property. These reasons do not provide a legal basis for the Defendants' acts. The collective acts of the Town Council and Mayor are inconsistent with the Town Council's passage of Ordinances 790, 791, and 792 during November, 2000.

## CAUSES OF ACTION

44. Defendants' approval of Ordinances 790, 791, and 792 and Defendants' approval of the town of LaConner's competing tidelands lease application with the DNR, all performed under the color of state law, are arbitrary, irrational and interfere with Plaintiff's property rights.

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070

45. The Defendants have no valid public purpose for their acts, and the acts violate Plaintiff's right to due process and right to equal protection under the United States Constitution.

46. The combined affects of the acts committed by Defendants described herein, combined with the Defendants' admitted desire to acquire the subject property for the town of LaConner, constitute a wrongful taking without fair compensation in violation of the United States Constitution.

47. Pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to recovery of damages against Defendants individually and separately.

**DAMAGES**

48. The acts of Defendants which have and are continuing to prevent Plaintiff from developing its land for any reasonable use has damaged Plaintiff by more than five million dollars ($5,000,000), for which Defendants are liable.

49. Pursuant to the July 31, 1998 agreement, Plaintiff has expended more than $100,000 participating in the agreed process only to have the recommended result arbitrarily, capriciously and irrationally rejected by Defendants acting under color of state law. Plaintiff is entitled to recovery of all funds expended in good faith, as damages against the Defendants.

50. Pursuant to 42 U.S.C. § 1988 (b), Plaintiff is entitled to recovery of attorney's fees incurred in bringing this action against Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. Damages in an amount to be proven in trial, believed to be excess of five million dollars ($5,000,000).

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070
Fax: (425) 576-4040

2. Punitive damages against Defendants Berg, O'Donnell and Lam who approved the July 31, 1998 agreement and who acted in bad faith and in direct violation of that agreement to deprive Plaintiff of its constitutionally protected rights.

3. Attorneys fees and costs as allowed under 42 U.S.C. § 1988 (b).

4. For such other and further relief as the court deems just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands that its claims for relief against Defendants be tried by a jury to the full extent permitted by law.

Dated this 13th day of February, 2001.

MAGNUSSON LAW OFFICE

By: [signature]
Craig D. Magnusson, WSBA #12733
Attorney for Plaintiff

MAGNUSSON LAW OFFICE
5400 Carillon Point
Kirkland, WA 98033
(425) 576-4070

B

118 S.Ct. 966 **Page 1**
140 L.Ed.2d 79, 76 Fair Empl.Prac Cas (BNA) 146, 72 Empl Prac Dec P 45,176, 13 IER Cases 1185, 98 Cal Daily Op Serv 1474, 98 Daily Journal D.A.R 2035, 98 CJ C A.R 945, 11 Fla. L Weekly Fed. S 356
**(Cite as: 523 U.S. 44, 118 S.Ct. 966)**

Supreme Court of the United States

Daniel BOGAN and Marilyn Roderick, Petitioners,
v
Janet SCOTT-HARRIS

No 96-1569

Argued Dec. 3, 1997
Decided March 3, 1998.

Former director of city's social services department brought § 1983 action against city and city officials, alleging that city's passage of ordinance eliminating director's position violated her First Amendment rights The United States District Court for the District of Massachusetts, Patti B Saris, J , entered judgment upon jury verdict for director and denied defendants' motions for judgment notwithstanding the verdict Defendants appealed The Court of Appeals for the First Circuit, 134 F 3d 427, affirmed in part, reversed in part, vacated in part, and remanded Certiorari was granted The Supreme Court, Justice Thomas, held that (1) local legislators are absolutely immune from suit under § 1983 for their legislative activities, (2) absolute legislative immunity attaches to all actions of local officials taken in sphere of legitimate legislative activity, (3) court could not consider subjective claim of former director that ordinance was act of retaliation for her expression of free speech rights; (4) vice president of city council committed legislative act, for which she was absolutely immune from suit, when she voted in favor of ordinance, and (5) mayor committed legislative acts when he prepared budget calling for elimination of former director's position and signed ordinance so providing into law

Reversed.

West Headnotes

[1] Civil Rights ⚷214(3)
78k214(3)

[1] Civil Rights ⚷214(4)
78k214(4)

State and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities 42 U S.C A. § 1983.

[2] Civil Rights ⚷214(4)
78k214(4)

Local legislators are absolutely immune from suit under § 1983 for their legislative activities. 42 U S C A § 1983

[3] Civil Rights ⚷214(4)
78k214(4)

Absolute legislative immunity from suit under § 1983 attaches to all actions of local officials taken in sphere of legitimate legislative activity 42 U S C A § 1983

[4] Civil Rights ⚷214(4)
78k214(4)

Whether act is "legislative," so as to confer absolute immunity from suit under § 1983 on local official performing act, turns on nature of act, rather than on motive or intent of official performing it 42 U S C.A § 1983

[5] Civil Rights ⚷214(4)
78k214(4)

In determining whether ordinance abolishing city department, of which civil rights complainant was sole employee, was legislative act for which officials were absolutely immune from suit under § 1983, court was precluded from considering subjective assertion of claimant that act was retaliation for her expression of free speech rights rather than legitimate legislation. 42 U S C A. § 1983

[6] Civil Rights ⚷214(4)
78k214(4)

Vice president of city council committed legislative act, when she voted for amendment abolishing city department of which complainant was sole employee, and consequently had absolute immunity from § 1983 suit brought by claimant. 42 U.S C.A. § 1983

Copr © West 2001 No Claim to Orig U S Govt Works

[7] Civil Rights ⚿214(4)
78k214(4)

City mayor performed legislative act, in formulating budget eliminating department of which civil rights complainant was sole employee, and in signing ordinance so providing, and was consequently entitled to absolute immunity from § 1983 suit by complainant, even though he was member of executive department of municipal government 42 U S C A. § 1983

[8] Officers and Public Employees ⚿114
283k114

Officials outside legislative branch are entitled to legislative immunity from suit when they perform legislative functions

[9] Civil Rights ⚿214(4)
78k214(4)

Ordinance eliminating city department of which civil rights complainant was sole employee was legislative in substance, precluding any need to consider whether formally legislative character of putatively legislative action by local officials would be sufficient to confer absolute immunity from § 1983 suit on city officials, ordinance reflected discretionary, policymaking decision implicating budgetary priorities of city. 42 U.S C.A. § 1983

****967** *Syllabus* [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader See *United States v. Detroit Timber & Lumber Co* , 200 U S 321, 337, 26 S Ct 282, 287, 50 L.Ed 499

Respondent Scott-Harris filed suit under 42 U S C. § 1983 against the city of Fall River, Massachusetts, petitioners Bogan (the city's mayor) and Roderick (the vice president of the city council), and other officials, alleging that the elimination of the city department in which Scott-Harris was the sole employee was motivated by racial animus and a desire to retaliate against her for exercising her First Amendment rights in filing a complaint against another city employee. The District Court twice denied petitioners' motions to dismiss on the ground of absolute immunity from suit. The jury returned a verdict in favor of all defendants on the racial discrimination charge, but found the city and petitioners liable on respondent's First Amendment claim The First Circuit set aside the verdict against the city but affirmed the judgments against Roderick and Bogan Although concluding that petitioners have absolute immunity from civil liability for damages arising out of their performance of legitimate legislative activities, that court held that their conduct in introducing, voting for, and signing the ordinance that eliminated respondent's office was not "legislative " Relying on the jury's finding that respondent's constitutionally sheltered speech was a substantial or motivating factor underlying petitioners' conduct, the court reasoned that the conduct was administrative, rather than legislative, because Roderick and Bogan relied on facts relating to a particular individual, respondent, in the decisionmaking calculus

*Held*

1 Local legislators are entitled to the same absolute immunity from civil liability under § 1983 for their legislative activities as ****968** has long been accorded to federal, state, and regional legislators See, *e g* , *Tenney v Brandhove*, 341 U S 367, 372, 372-376, 71 S Ct 783, 95 L.Ed. 1019, *Amy v Supervisors*, 11 Wall 136, 138, 20 L Ed 101, distinguished Such immunity finds pervasive support not only in common-law cases and older treatises, but also in reason See *Tenney*, 341 U.S , at 376, 71 S Ct , at 788. The rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. See, *e.g.*, *id.*, at 377, 71 S Ct at 788-789 Furthermore, the time and energy required to defend against a lawsuit are ***45** of particular concern at the local level, where the part-time citizen-legislator remains commonplace. See *ibid.* And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability. See *Harlow v. Fitzgerald*, 457 U.S. 800, 827, 102 S Ct. 2727, 2742-43, 73 L.Ed 2d 396 (Burger, C. J , dissenting). Moreover, certain deterrents to legislative abuse may be greater at the local level than at other levels of government, including the availability of municipal liability for constitutional

Copr © West 2001 No Claim to Orig U S Govt Works

violations, *e.g.*, *Lake Country Estates, Inc v Tahoe Regional Planning Agency*, 440 U S. 391, 405, n 29, 99 S.Ct. 1171, 1179, n. 29, 59 L Ed.2d 401, and the ultimate check on legislative abuse, the electoral process, cf. *Tenney, supra*, at 378, 71 S.Ct. at 789. Indeed, any argument that the rationale for absolute immunity does not extend to local legislators is implicitly foreclosed by *Lake Country Estates, supra*, at 401-402, 99 S Ct at 1177-1178 Pp. 970-972.

2 Petitioners' actions in this case were protected by absolute immunity, which attaches to all acts taken "in the sphere of legitimate legislative activity " *Tenney*, 341 U S., at 376, 71 S.Ct , at 788 The First Circuit erroneously relied on petitioners' subjective intent in resolving whether their acts so qualified. Whether an act is legislative turns on the nature of the act itself, rather than on the motive or intent of the official performing it. *Id* , at 370, 377, 71 S.Ct., at 785, 788-89 This Court has little trouble concluding that, stripped of all considerations of intent and motive, petitioners' actions were legislative. Most evidently, petitioner Roderick's acts of voting for the ordinance eliminating respondent's office were, in form, quintessentially legislative Petitioner Bogan's introduction of a budget that proposed the elimination of city jobs and his signing the ordinance into law also were formally legislative, even though he was an executive official Officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions, see *Supreme Court of Va. v Consumers Union of United States, Inc* , 446 U S. 719, 731-734, 100 S Ct. 1967, 1974-76, 64 L Ed 2d 641, Bogan's actions were legislative because they were integral steps in the legislative process. Cf., *e g* , *Edwards v. United States*, 286 U.S 482, 490, 52 S Ct 627, 630, 76 L Ed. 1239. Furthermore, this particular ordinance, in substance, bore all the hallmarks of traditional legislation: It reflected a discretionary, policymaking decision implicating the city's budgetary priorities and its services to constituents; it involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office, and, in eliminating respondent's office, it governed in a field where legislators traditionally have power to act, *Tenney, supra*, at 379, 71 S Ct., at 789. Pp. 972-973.

134 F.3d 427, reversed

***46** THOMAS, J., delivered the opinion for a unanimous Court.

Charles Rothfeld, Washington, DC, for petitioners.

Harvey A Schwartz, Boston, MA, for respondent.

For U S Supreme Court Briefs See:

1997 WL 469403 (Pet Brief)

1997 WL 615776 (Resp Brief)

1997 WL 703004 (Reply Brief)

1997 WL 732507 (Pet.Supp Brief)

1997 WL 476510 (Amicus.Brief)

1997 WL 476521 (Amicus Brief)

1997 WL 489030 (Amicus Brief)

1997 WL 697793 (Amicus Brief)

For Transcript of Oral Argument See

1997 WL 757736 (U.S Oral Arg.)

****969** Justice THOMAS delivered the opinion of the Court

It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities. In this case, petitioners argue that they, as local officials performing legislative functions, are entitled to the same protection. They further argue that their acts of introducing, voting for, and signing an ordinance eliminating the government office held by respondent constituted legislative activities. We agree on both counts and therefore reverse the judgment below.

I

Respondent Janet Scott-Harris was administrator of the Department of Health and Human Services (DHHS) for the city of Fall River, Massachusetts,

from 1987 to 1991. In 1990, respondent received a complaint that Dorothy Biltcliffe, an employee serving temporarily under her supervision, had made repeated racial and ethnic slurs about her colleagues After respondent prepared termination charges against Biltcliffe, Biltcliffe used her political connections to press her case with several state and local officials, including *47 petitioner Marilyn Roderick, the vice president of the Fall River City Council. The city council held a hearing on the charges against Biltcliffe and ultimately accepted a settlement proposal under which Biltcliffe would be suspended without pay for 60 days Petitioner Daniel Bogan, the mayor of Fall River, thereafter substantially reduced the punishment

While the charges against Biltcliffe were pending, Mayor Bogan prepared his budget proposal for the 1992 fiscal year Anticipating a 5 to 10 percent reduction in state aid, Bogan proposed freezing the salaries of all municipal employees and eliminating 135 city positions As part of this package, Bogan called for the elimination of DHHS, of which respondent was the sole employee. The city council ordinance committee, which was chaired by Roderick, approved an ordinance eliminating DHHS. The city council thereafter adopted the ordinance by a vote of 6 to 2, with petitioner Roderick among those voting in favor Bogan signed the ordinance into law

Respondent then filed suit under Rev Stat § 1979, 42 U S.C. § 1983, against the city, Bogan, Roderick, and several other city officials She alleged that the elimination of her position was motivated by racial animus and a desire to retaliate against her for exercising her First Amendment rights in filing the complaint against Biltcliffe. The District Court denied Bogan's and Roderick's motions to dismiss on the ground of legislative immunity, and the case proceeded to trial. *Scott-Harris v. City of Fall River, et al.*, Civ. 91-12057-PBS (Mass , Jan 27, 1995), App. to Pet for Cert. 1.

The jury returned a verdict in favor of all defendants on the racial discrimination charge, but found the city, Bogan, and Roderick liable on respondent's First Amendment claim, concluding that respondent's constitutionally protected speech was a substantial or motivating factor in the elimination *48 of her position [FN1] On a motion for judgment notwithstanding the verdict, the District Court again denied Bogan's and Roderick's claims of absolute legislative immunity, reasoning that "the ordinance amendment passed by the city council was an individually-targeted administrative act, rather than a neutral, legislative elimination of a position which incidentally resulted in the termination of plaintiff." *Id.*, at 20

FN1 Respondent dropped several other defendants from the suit, and the District Court directed a verdict in favor of defendant Robert Connors, the Fall River City Administrator Only the city, Bogan, and Roderick were appellants in the Court of Appeals, and only the latter two are petitioners in this Court

The United States Court of Appeals for the First Circuit set aside the verdict against the city but affirmed the judgments against Roderick and Bogan *Scott-Harris v Fall River,* 134 F 3d 427 (1997) [FN2] Although the court concluded that petitioners have "absolute immunity from civil liability for damages **970 arising out of their performance of legitimate legislative activities," *id* , at 440, it held that their challenged conduct was not "legislative," *id* , at 441. Relying on the jury's finding that "constitutionally sheltered speech was a substantial or motivating factor" underlying petitioners' conduct, the court reasoned that the conduct was administrative, rather than legislative, because Roderick and Bogan "relied on facts relating to a particular individual [respondent] in the decisionmaking calculus." *Ibid.* We granted certiorari 520 U S. 1263, 117 S Ct. 2430, 138 L Ed 2d 192 (1997)

FN2 The court held that the city was not liable because the jury could reasonably infer unlawful intent only as to two of the city council members, and municipal liability could not rest "on so frail a foundation." 134 F 3d , at 440

## II

The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo-American law. This privilege "has taproots *49 in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries" and was "taken as a matter of course by those who severed the Colonies from the Crown and founded our Nation " *Tenney v. Brandhove,* 341

Copr © West 2001 No Claim to Orig U S Govt. Works

U.S. 367, 372, 71 S.Ct. 783, 786, 95 L.Ed. 1019 (1951). The Federal Constitution, the Constitutions of many of the newly independent States, and the common law thus protected legislators from liability for their legislative activities. See U.S Const., Art. I, § 6; *Tenney, supra,* at 372-375, 71 S Ct., at 786-88.

[1][2] Recognizing this venerable tradition, we have held that state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities. See *Tenney, supra* (state legislators); *Lake Country Estates, Inc v. Tahoe Regional Planning Agency,* 440 U S. 391, 99 S.Ct 1171, 59 L Ed 2d 401 (1979) (regional legislators), [FN3] see also *Kilbourn v Thompson,* 103 U.S. 168, 202-204, 26 L.Ed. 377 (1880) (interpreting the federal Speech and Debate Clause, U S Const , Art I, § 6, to provide similar immunity to Members of Congress). We explained that legislators were entitled to absolute immunity from suit at common law and that Congress did not intend the general language of § 1983 to "impinge on a tradition so well grounded in history and reason " *Tenney, supra,* at 376, 71 S.Ct , at 788 Because the common law accorded local legislators the same absolute immunity it accorded legislators at other levels of government, and because the rationales for such immunity are fully applicable to local legislators, we now hold that local legislators are likewise absolutely immune from suit under § 1983 for their legislative activities.

FN3. The "regional" legislature in *Lake Country Estates* was the governing body of an agency created by a compact between two States to coordinate and regulate development in a region encompassing portions of both States *Lake Country Estates v Tahoe Regional Planning Agency,* 440 U.S , at 394, 99 S.Ct , at 1173-74

The common law at the time § 1983 was enacted deemed local legislators to be absolutely immune from suit for their legislative activities. New York's highest court, for example, held that municipal aldermen were immune from suit for *50 their discretionary decisions *Wilson v New York,* 1 Denio 595 (1845) The court explained that when a local legislator exercises discretionary powers, he "is exempt from all responsibility by action for the motives which influence him, and the manner in which such duties are performed. If corrupt, he may be impeached or indicted, but the law will not tolerate an action to redress the individual wrong which may have been done " *Id.,* at 599 [FN4] These principles, according to the court, were "too familiar and well settled to require illustration or authority." *Id.,* at 599-600.

FN4 The court distinguished "discretionary" duties, which were protected absolutely, and "ministerial" duties, which were not. Although the court described the former as "judicial" in nature, it was merely using the term broadly to encompass the "discretionary" acts of officials See 1 Denio, at 599 ("[I]f his powers are discretionary, to be exerted or withheld, according to his own view of what is necessary and proper, they are in their nature judicial"). The legislators' actions in *Wilson* were unquestionably legislative in both form and substance. Thus, *Wilson* was widely, and correctly, cited as a leading case regarding *legislative* immunity See, *e g* , T Cooley, Law of Torts 377, n. 1 (1880) (hereinafter Cooley), F. Mechem, Law of Public Offices and Officers § 644, p 431, n 1 (1890) (hereinafter Mechem); M Throop, Law Relating to Public Officers § 709, p 671, n 1 (1892).

**971 Shortly after § 1983 was enacted, the Mississippi Supreme Court reached a similar conclusion, holding that town aldermen could not be held liable under state law for their role in the adoption of an allegedly unlawful ordinance. *Jones v Loving,* 55 Miss 109, 30 Am. Rep 508 (1877). The court explained that "[i]t certainly cannot be argued that the motives of the individual members of a legislative assembly, in voting for a particular law, can be inquired into, and its supporters be made personally liable, upon an allegation that they acted maliciously towards the person aggrieved by the passage of the law." *Id* , at 111, 30 Am. Rep , at 509. The court thus concluded that "[w]henever the officers of a municipal corporation are vested with legislative powers, they hold and exercise them for the public good, and are clothed with *51 all the immunities of government, and are exempt from all liability for their mistaken use." *Ibid.*

Treatises of that era confirm that this was the pervasive view. A leading treatise on municipal corporations explained that "[w]here the *officers of a municipal corporation* are invested with legislative powers, they *are exempt from individual liability* for the passage of any ordinance within their authority,

Copr © West 2001 No Claim to Orig. U.S. Govt. Works

and their motives in reference thereto will not be inquired into." 1 J Dillon, Law of Municipal Corporations § 313, pp 326-327 (3d ed 1881) (emphasis in original). Thomas Cooley likewise noted in his influential treatise on the law of torts that the "rightful exemption" of legislators from liability was "very plain" and applied to members of "inferior legislative bodies, such as boards of supervisors, county commissioners, city councils, and the like " Cooley 376; see also J Bishop, Commentaries on the Non-Contract Law § 744 (1889) (noting that municipal legislators were immune for their legislative functions), Mechem §§ 644-646 (same), Throop, *supra* n 4, § 709, at 671 (same)

Even the authorities cited by respondent are consistent with the view that local legislators were absolutely immune for their legislative, as distinct from ministerial, duties In the few cases in which liability did attach, the courts emphasized that the defendant officials lacked discretion, and the duties were thus ministerial See, *e.g*, *Morris v The People*, 3 Demo 381, 395 (N Y 1846) (noting that the duty was "of a ministerial character only"), *Caswell v. Allen*, 7 Johns 63, 68 (N Y.1810) (holding supervisors liable because the act was "mandatory" and "[n]o discretion appear[ed] to [have been] given to the supervisors") Respondent's heavy reliance on our decision in *Amy v Supervisors*, 11 Wall 136, 20 L Ed 101 (1871), is misguided for this very reason In that case, we held that local legislators could be held liable for violating a court order to levy a tax sufficient to pay a judgment, but only because the court order had created a ministerial duty. *Id*, at 138 ("The rule is well settled, that where the law requires *52 absolutely a ministerial act to be done by a public officer, and he neglects or refuses to do such act, he may be compelled to respond in damages to the extent of the injury arising from his conduct"). The treatises cited by respondent confirm that this distinction between legislative and ministerial duties was dispositive of the right to absolute immunity. See, *e g.*, Cooley 377 (stating that local legislators may be held liable only for their "ministerial" duties); Mechem § 647 (same)

Absolute immunity for local legislators under § 1983 finds support not only in history, but also in reason. See *Tenney v. Brandhove*, 341 U S, at 376, 71 S Ct., at 788-89 (stating that Congress did not intend for § 1983 to "impinge on a tradition so well grounded in history and reason"). The rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability See *Spallone v United States*, 493 U.S. 265, 279, 110 S Ct 625, 634, 107 L.Ed 2d 644 (1990) (noting, in the context of addressing local legislative action, that "any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process"); see also *Kilbourn v Thompson*, 103 U.S, at 201-204 (federal legislators); *Tenney, supra*, **972 at 377, 71 S.Ct., at 788-89 (state legislators), *Lake Country Estates*, 440 U S., at 405, 99 S Ct, at 1179 (regional legislators). Furthermore, the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace. See *Tenney, supra*, at 377, 71 S Ct, at 788-89 (citing "the cost and inconvenience and distractions of a trial") And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability. See *Harlow v. Fitzgerald*, 457 U S 800, 816, 102 S.Ct 2727, 2737, 73 L Ed 2d 396 (1982).

*53 Moreover, certain deterrents to legislative abuse may be greater at the local level than at other levels of government. Municipalities themselves can be held liable for constitutional violations, whereas States and the Federal Government are often protected by sovereign immunity. *Lake Country Estates, supra*, at 405, n. 29, 99 S Ct., at 1179 (citing *Monell v. New York City Dept. of Social Servs*, 436 U S 658, 98 S.Ct 2018, 56 L.Ed.2d 611 (1978)). And, of course, the ultimate check on legislative abuse--the electoral process--applies with equal force at the local level, where legislators are often more closely responsible to the electorate. Cf *Tenney, supra*, at 378, 71 S.Ct., at 789 (stating that "[s]elf-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses")

Any argument that the rationale for absolute immunity does not extend to local legislators is

Copr © West 2001 No Claim to Orig. U.S. Govt Works

implicitly foreclosed by our opinion in *Lake Country Estates*. There, we held that members of an interstate regional planning agency were entitled to absolute legislative immunity Bereft of any historical antecedent to the regional agency, we relied almost exclusively on *Tenney* 's description of the purposes of legislative immunity and the importance of such immunity in advancing the "public good." Although we expressly noted that local legislators were not at issue in that case, see *Lake Country Estates*, 440 U S , at 404, n 26, 99 S Ct., at 1179, n 26 we considered the regional legislators at issue to be the functional equivalents of local legislators, noting that the regional agency was "comparable to a county or municipality" and that the function of the regional agency, regulation of land use, was "traditionally a function performed by local governments." *Id.*, at 401-402, 99 S Ct., at 1177 [FN5] Thus, we now make explicit what was implicit ***54** in our precedents Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities

FN5. It is thus not surprising that several Members of this Court have recognized that the rationale of *Lake Country Estates* essentially settled the question of immunity for local legislators See *Owen v Independence*, 445 U S 622, 664, n 6, 100 S Ct 1398, 1422, n 6, 63 L Ed 2d 673 (1980) (Powell, J , dissenting), *Lake Country Estates, Inc v Tahoe Regional Planning Agency*, 440 U S 391, 407-408, 99 S.Ct 1171, 1180-1181, 59 L Ed 2d 401 (1979) (Marshall, J , dissenting in part), see also *Spallone v United States*, 493 U S 265, 278, 110 S Ct 625, 633- 34, 107 L Ed 2d 644 (1990) (explaining that the same considerations underlying *Tenney* and *Lake Country Estates* applied to contempt sanctions against local legislators) In fact, the argument for absolute immunity for local legislators may be stronger than for the regional legislators in *Lake Country Estates*, because immunity was historically granted to local legislators and because the legislators in *Lake Country Estates* were unelected and thus less directly accountable to the public See *Lake Country Estates, supra*, at 407, 99 S Ct , at 1180 (Marshall, J , dissenting in part)

III

[3] Absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity." *Tenney, supra, at* 376, 71 S Ct., at 788 The Court of Appeals held that petitioners' conduct in this case was not legislative because their actions were specifically targeted at respondent. Relying on the jury's finding that respondent's constitutionally protected speech was a substantial or motivating factor behind petitioners' conduct, the court concluded that petitioners necessarily "relied on facts relating to a particular individual" and "devised an ordinance that targeted [respondent] and treated her differently from other managers employed by the City " 134 F 3d, at 441. Although the Court of Appeals did not suggest that intent or motive can overcome an immunity defense for activities that are, in ****973** fact, legislative, the court erroneously relied on petitioners' subjective intent in resolving the logically prior question of whether their acts were legislative

[4][5] Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it The privilege of absolute immunity "would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives " *Tenney, 341 U S , at 377, 71 S Ct , at 788*55 (internal quotation marks omitted). Furthermore, it simply is "not consonant with our scheme of government for a court to inquire into the motives of legislators "* Ibid. *We therefore held that the defendant in* Tenney *had acted in a legislative capacity even though he allegedly singled out the plaintiff for investigation in order "to intimidate and silence plaintiff and deter and prevent him from effectively exercising his constitutional rights "* Id., *at 371, 71 S Ct , at 785 (internal quotation marks omitted)*

[6][7][8] This leaves us with the question whether, stripped of all considerations of intent and motive, petitioners' actions were legislative. We have little trouble concluding that they were. Most evidently, petitioner Roderick's acts of voting for an ordinance were, in form, quintessentially legislative. Petitioner Bogan's introduction of a budget and signing into law an ordinance also were formally legislative, even though he was an executive official. We have recognized that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions, see *Supreme Court of Va. v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731-734, 100 S.Ct. 1967, 1974-76, 64 L Ed.2d 641 (1980); Bogan's

Copr © West 2001 No Claim to Orig. U S Govt. Works

actions were legislative because they were integral steps in the legislative process. Cf. *Edwards v. United States,* 286 U S 482, 490, 52 S.Ct. 627, 630, 76 L Ed 1239 (1932) (noting "the legislative character of the President's function in approving or disapproving bills"); *Smiley v Holm,* 285 U S 355, 372-373, 52 S Ct 397, 401-02, 76 L Ed. 795 (1932) (recognizing that a Governor's signing or vetoing of a bill constitutes part of the legislative process)

[9] Respondent, however, asks us to look beyond petitioners' formal actions to consider whether the ordinance was legislative in *substance* We need not determine whether the formally legislative character of petitioners' actions is alone sufficient to entitle petitioners to legislative immunity, because here the ordinance, in substance, bore all the hallmarks of traditional legislation   The ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities *56 of the city and the services the city provides to its constituents   Moreover, it involved the termination of a position, which, unlike

the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office. And the city council, in eliminating DHHS, certainly governed "in a field where legislators traditionally have power to act." *Tenney, supra,* at 379, 71 S Ct , at 789. Thus, petitioners' activities were undoubtedly legislative

* * *

For the foregoing reasons, the judgment of the Court of Appeals is reversed   [FN6]

FN6 Because of our conclusion that petitioners are entitled to absolute legislative immunity, we need not address the third question on which we granted certiorari   whether petitioners proximately caused an injury cognizable under § 1983

*It is so ordered.*

END OF DOCUMENT

Copr © West 2001 No Claim to Orig U S. Govt. Works